UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES ALAN GERDON,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>TIM WENGLER,<br><br>　　　　　Respondent. | Case No. 1:12-cv-00164-REB<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL** |

　　　　Pending before the Court is Respondent's Motion for Summary Dismissal. (Dkt. 23.) Rather than file a response to the Motion within the extension period he sought, Petitioner filed several motions, including a "Notice of Tainted Evidence," alleging that Respondent is relying on false evidence. The Court ordered Petitioner to identify each document that he believed was tainted or falsified, and either provide the true and correct document or state where it could be located. (Dkt. 37.) Petitioner has done so. (Dkt. 38.)

　　　　The Court also ordered Petitioner to file a response to the pending Motion for Summary Dismissal simultaneously with his explanation regarding the tainted evidence. The Court explained:

> Should the Court find that the "tainted evidence" issue affects the Motion
> for Summary Dismissal disposition and requires a hearing for resolution,
> the Court will set a hearing and provide Petitioner with additional time to
> respond to the motion after a hearing. Should the "tainted evidence" issue

be meritless or moot, then the Court will resolve the pending Motion for Summary Dismissal on the parties' briefing submitted at that time.

(Dkt. 37, Order Requiring Petitioner to Take Action, p. 2.) Petitioner was warned that failure to file a response to the pending Motion for Summary Dismissal could result in dismissal of the case with prejudice. (*Id.*, p. 3.) Nevertheless, Petitioner has elected not to file a response to the Motion. Therefore, the Court will consider the Motion on the briefing now before the Court.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties, and of the most recent state court appellate decision in his case, *Gerdon v. State*, 2014 WL 464005 (Feb. 4, 2014) (unpublished). *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 11.) Accordingly, the Court enters the following Order.

## PETITIONER'S CLAIMS OF TAINTED OR FALSIFIED EVIDENCE

Petitioner challenges Respondent's assertion that Petitioner's "motion to overturn the verdict" was filed in state court on August 29, 2011. (*See* State's Lodging K-1, pp. 299-300.) Petitioner asserts that it was actually filed seven years earlier, on March 11, 2004. (State's Lodging A-1, pp. 91-92.)

Both parties are correct. First, the pro se motion *originally* was filed with the state district court on March 11, 2004, after the judgment of conviction was entered. Petitioner's counsel filed a notice of appeal on March 16, 2004. Petitioner followed up on

the status of his pro se motion with a letter to the court on March 20, 2004, but he never properly noticed the motion for a hearing. The motion remained "pending" without a ruling, until Petitioner "filed" the motion again, on August 29, 2011—this time as an exhibit to a motion to vacate the conviction. (State's Lodging K-1, p. 268.) The clerk of court stamped the copy of the 2004 motion with a receipt date of August 29, 2011, as if it had been submitted as a new motion, rather than an attachment. Regardless of the mix-up, this Court and the state district court recognized that the motion was first filed in 2004 and not ruled upon until the 2011 action. (State's Lodging K-1, pp. 304-08.)

Hence, Petitioner's claim of tainted or falsified evidence is a non-issue, because the Court is not relying on the date of the re-urging of the motion in 2011 as the filing date, but is relying on the actual filing date in 2004. Therefore, Petitioner's objection is noted, as is his argument that his federal statute of limitations was statutorily tolled during the entire time the motion was "pending."

The statute of limitations defense has several interesting and difficult issues to be resolved, including the issue raised above. The procedural default defense, however, is much more straightforward; therefore, the Court will begin with a discussion of the procedural default defense. As to that defense, a conclusion of either untimeliness *or* procedural default will independently bar the Court from hearing the merits of Petitioner's claims. In addition, as the Court will explain, a number of Petitioner's claims are grounded upon state law and do not state federal habeas corpus claims upon which relief can be granted.

**REVIEW OF MOTION FOR SUMMARY DISMISSAL**

## 1. Standard Governing Summary Dismissal Motions

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

## 2. Background

Petitioner, who was 34 at the time, had a "sleepover" with three boys, ages 10, 11, and 12. They played video games and drank alcohol, and eventually the group engaged in oral sex and "doggie-style sex," under Petitioner's threats to the children involving a knife. (State's Lodging B-2.) After a grand jury indictment on 17 criminal counts related to the incidents, Petitioner entered into a plea agreement to plead guilty to 9 charges, with all other charges to be dismissed by the State. (State's Lodging A-1, pp. 42-56.) The state district court imposed concurrent sentences that amounted to 15 years fixed, followed by 15 years indeterminate. (State's Lodging A-1, pp. 82-84.)

On direct appeal, Petitioner's appellate counsel argued that the sentences were excessive. (State's Lodging B-1.) The Idaho Court of Appeals affirmed the sentences. Petitioner then filed a petition for review, which was denied by the Idaho Supreme Court on July 5, 2005. (State's Lodgings B-4 to B-7.)

Petitioner filed a post-conviction petition while his direct appeal was pending. (State's Lodging C-1, entry dated 10/19/2004.) The state district court denied the post-conviction petition on June 29, 2006. (*See id.*, entry dated 6/29/2006.) The state court also entered a supplemental memorandum opinion and order of dismissal on July 25, 2006. (State's Lodging C-1, p. 2, entry dated 7/25/2006.) No appeal in the post-conviction action was filed.

More than a year later, Petitioner sent a letter of inquiry to the clerk of court stating that his lawyers had failed to file an appeal in the post-conviction matter, despite his instruction to them to do so. (State's Lodging E-1, pp. 41, 47.) Petitioner filed a notice of appeal in his post-conviction case several months after his letter, on September 10, 2007, well beyond the 42-day time limit for filing an appeal. (*See id.*, entry dated 9/10/2007.) Because the notice of appeal was untimely, the Idaho Supreme Court issued an order and notice of intent to dismiss the appeal, giving Petitioner 21 days to respond. (State's Lodging D-1.) Petitioner, with the assistance of counsel, filed a response, asking the court to retain the case. (State's Lodging D-2, p.2.) The Idaho Supreme Court dismissed the post-conviction appeal on November 16, 2007, and issued its Remittitur on December 7, 2007. (State's Lodgings D-3, D-4.) As a result, no claim presented in the post-conviction matter was briefed or decided on appeal.

On April 21, 2008, Petitioner filed a successive post-conviction petition pro se. (State's Lodging E-1, pp.7-10.) Petitioner was later appointed an attorney in that action. The state district court dismissed the petition on the grounds that Petitioner's "allegations [were] conclusory and unsubstantiated by any fact" and because a claim of ineffective

assistance of post-conviction counsel during the first post-conviction case was "not a cognizable ground for filing a subsequent post-conviction relief application." (State's Lodging E-1, p.54.) Petitioner filed a timely notice of appeal, but later voluntarily dismissed the appeal in a motion that was signed by Petitioner and his attorney. (State's Lodgings E-1, pp. 56-68 & F-1.) The Idaho Supreme Court granted the motion, dismissed the appeal, and issued a remittitur on April 5, 2010. (State's Lodging F-2.) As before, none of the claims in the successive post-conviction petition were decided on appeal.

On June 21, 2010, Petitioner filed a second successive post-conviction petition. (State's Lodging I-1, pp. 7-10.) With the assistance of counsel, Petitioner filed an amended petition on April 18, 2011. (State's Lodging I-1, pp. 188-190.) The state district court dismissed the second successive petition after an evidentiary hearing. (State's Lodgings I-1 & I-2.) Petitioner filed a notice of appeal, asserting that the state district court erred by dismissing his petition "as untimely and as a successive petition, because the doctrine of equitable tolling should have applied." (State's Lodging J-1, p.2.) The Idaho Court of Appeals affirmed the dismissal of the second successive petition. (State's Lodging J-4.) The Idaho Supreme Court denied the petition for review and issued its remittitur on May 6, 2013. (State's Lodgings J-5, J-6, J-7, J-8.) No substantive claims were presented or decided on appeal.

Petitioner filed a third successive petition, challenging the fact that the state district court left the pro se motion to overturn the verdict pending for seven years. The Idaho Court of Appeals rejected Petitioner's argument that his third successive petition

was timely because the motion had remained pending for seven years, among other arguments. *See Gerdon v. State*, 2014 WL 464005 (Feb. 4, 2014) (unpublished).

During the pendency of his various post-conviction proceedings, Petitioner filed several other pro se motions, including: (1) an I.C.R. 35 motion, filed April 28, 2010 (State's Lodging K-1, pp. 216-218); (2) an "amended motion to vacate," filed August 29, 2011 (*id.*, pp. 268-269), accompanied by an exhibit, the 2004 "motion to overturn verdict" (*id.*, pp. 299-300); and (3) a motion to withdraw the guilty plea, filed November 14, 2011 (*id.*, pp. 315-317). The trial court denied all these motions. (*Id.*, pp. 262-266, 304-308, 367.)

Petitioner appealed from denial of the amended motion to vacate (with attached motion to overturn the verdict) and the motion to withdraw the guilty plea. (State's Lodging L-1.) The issue Petitioner appealed was that the district court erred in denying the motions for untimeliness reasons, but he acknowledged that the district court lacked jurisdiction to grant the motions. (*Id.*) The Idaho Court of Appeals affirmed on grounds of untimeliness and lack of jurisdiction, and the Idaho Supreme Court denied the petition for review, issuing its remittitur on September 6, 2012. (State's Lodgings L-4 to L-7.) No substantive questions were presented or decided on appeal.

On October 9, 2012, Petitioner filed Rule 60(b) motions for relief in his initial and first successive post-conviction actions. (State's Lodgings M-1, pp. 5-6; M-2, pp. 29-30.) The motions were denied. On appeal, Petitioner presented claims of whether the district court erred when it denied the motions regarding his right to effective assistance of post-conviction counsel. (State's Lodging N-1.) The Idaho Court of Appeals affirmed. (State's

Lodging N-7.) The Idaho Supreme Court denied the petition for review and issued its remittitur on June 20, 2014. (State's Lodgings N-8, N-9, N-10, N-11.) No substantive claims were presented or decided on appeal.

In this federal habeas corpus action, Petitioner originally filed his petition on April 2, 2012. (Dkt. 3.) This case was stayed while Petitioner pursued state court relief. Petitioner filed his amended petition on May 27, 2014 (Dkt. 16), and the Court re-opened this case on October 16, 2014. (Dkt. 17.) Thereafter, Respondent filed a Motion for Summary Dismissal. As indicated above, Petitioner has had opportunity but has chosen not to file a formal response.

**REVIEW OF CLAIMS**

### 1. Cognizability

#### A. Standard of Law

Habeas corpus relief cannot be granted on the grounds that a conviction or sentence violates the state constitution or state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."); *see also Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994) (noting that generally federal habeas corpus is unavailable for alleged errors in interpretation and application of state law).

Neither is habeas corpus the proper avenue to address errors in a state's post-conviction review process. *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989), *cert. denied*, 493 U.S. 1012 (1989). In *Williams v. Missouri*, 640 F.2d 140 (8th Cir. 1981), the court explained:

[I]nfirmities in the state's post conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction [citation omitted]. . . . There is no federal constitutional requirement that the state provide a means of post-conviction review of state convictions. . . . Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions. Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since [such a] claim . . . represents an attack on a proceeding collateral to detention of appellant and not on the detention itself.

*Id*. at 143-44.

### B.    *Discussion of Claim 1*

Claim 1 is that the state courts erred by misplacing, mislabeling, and failing to rule on several of his legal documents and by making the following mistakes related to his filings: (a) failing to rule on the motion to overturn the verdict; (b) declaring a notice of appeal untimely (this occurred in his original post-conviction matter); (c) admitting in 2011 that it had never ruled on the 2004 motion to overturn the verdict and it did not have jurisdiction to correct the error (this occurred in the second successive post-conviction matter); and (d) refusing to correct the foregoing court errors on post-conviction review. (Petitioner also asserts that his request for a public defender was ignored by the state court; however, because this is the subject of Claim 6, it is addressed below, rather than here.)

These alleged state court errors do not amount to a challenge to Petitioner's criminal conviction, sentence, or direct appeal; instead, they are a challenge to state

procedural rules and state post-conviction procedures. Therefore, Claim 1 is not cognizable as a federal habeas corpus claim.

### C. Discussion of Subclaim 2(c)

Subclaim 2(c) is that Petitioner could not file a timely notice of appeal because the state of Idaho intercepted, delayed, or destroyed Petitioner's legal mail without notifying him. After judgment was entered, Petitioner's counsel did, in fact, file a notice of appeal on direct appeal, which counsel pursued through its completion. When Petitioner asserts that the thwarting of his mail caused him to be unable to file an appeal, he is referring to the appeal of his original post-conviction action. As noted above, post-conviction errors are not cognizable on federal habeas review. Therefore, this claim is subject to summary dismissal.

### D. Claim 3

Claim 3 is that the state court "created inaccurate and fraudulent documents that were used against the petitioner." (Dkt. 16, p. 9.) Petitioner alleges that he did not authorize his counsel to file an appeal on March 16, 2009. He alleges that the state court clerk wrongly notified the federal district and appellate courts that he had filed an appeal. However, Petitioner's direct appeal was filed in 2004 and concluded in 2005. Thus, any appeal in 2009 necessarily related to a post-conviction action. Errors in post-conviction review procedures are not cognizable on federal habeas corpus review.

## 2. Post-Conviction Counsel's Errors

### A. Standard of Law

The law is clear that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

### B. Claim 9

Claim 9 is based on ineffective assistance of post-conviction counsel. Because such a claim is not a challenge to a conviction, sentence, or direct appeal, it is a noncognizable claim.

## 3. Access to Counsel and the Courts

### A. Standard of Law

Criminal defendants have a Sixth Amendment right to effective assistance of counsel, as well as a Sixth Amendment right to waive counsel and represent themselves when they voluntarily and intelligently decide to do so. *Faretta v. California*, 422 U.S. 806 (1975). The law is clear that an inmate is entitled to counsel *or* an adequate alternative legal resource if pro se (not necessarily including the ability to perform research), but not both. *See United States v. Wilson*, 690 F.2d 1267 (9th Cir. 1982); *see also Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir. 1985); *Waldrip v. Hall*, 548 F.3d 729, 737 (9th Cir. 2008.)

### B. Discussion of Claim 2(a)

Claim 2 is that Petitioner "could not get his [pro se] motions filed or ruled on."

Petitioner was represented by counsel Anthony Valdez at all times during his criminal action. Therefore, he had no right to also act pro se in that matter. Because Petitioner had counsel, he had no federal right to file any motions or conduct any research on his own. The claim is subject to summary dismissal for failure to state a claim upon which relief can be granted.

### C.    *Discussion of Claim 5*

Claim 5 is that Petitioner was denied a law library "and accessories," and that he was denied mail service. He states that he was forced to use scratch paper and a pencil to prepare his pleadings and papers, rather than legal forms. These deficiencies resulted in "no rulings on issues or rulings against the petitioner." (Dkt. 16, p. 13.) Because Petitioner had counsel at all critical stages of his criminal proceedings, as discussed above, this claim fails to state a claim upon which relief can be granted. To the extent that Petitioner is referring to his post-conviction filings, his claim is noncognizable as a federal habeas corpus claim.

### 4.  **Procedural Default**

### A.    *Standard of Law*

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each

level of appellate review. *Id.* at 845. In Idaho, where there is the possibility of discretionary Idaho Supreme Court review of the Idaho Court of Appeals' opinions, the petitioner must have presented all his federal claims in a petition seeking review before the Idaho Supreme Court. *Id.* at 847. "Fair presentation" requires description of both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it under the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B. Discussion

The state court record reflects that the only substantive claim presented to the Idaho Supreme Court was that of an excessive sentence, which itself is not a federal claim. While Petitioner presented some cognizable federal claims to the state *trial* court, he did not present any of those claims to the Idaho Supreme Court. For the reasons set forth in this decision, the Court concludes that all of Petitioner's cognizable claims are procedurally defaulted.

## 5. Cause and Prejudice

### A. *Standard of Law*

Petitioner cannot proceed on his defaulted claims without a showing of cause and prejudice or a miscarriage of justice. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)

Ordinarily, to show "cause" for a procedural default, petitioner must prove that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488. To show "prejudice," a petitioner must show "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment's right to effective assistance of counsel may, under certain circumstances, serve as cause to excuse the procedural default of other claims. *Murray*, 477 U.S. 488. However, an allegation of ineffective assistance of counsel will excuse the default of other claims *only* if the ineffective assistance of counsel claim itself is not procedurally defaulted or, if defaulted, Petitioner can show cause and prejudice for the default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal court can consider ineffective

assistance of counsel as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to the related but different topic of alleged errors of counsel made on post-conviction review that cause the default of claims, the general rule on procedural default is that any errors of a defense attorney during a post-conviction action *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. 752. This barrier stems from the rule that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

There is, however, a limited exception to the *Coleman* rule, established in *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The *Martinez* exception exists because "as an equitable matter... the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 14.

The *Martinez* exception permits the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel. *Id*. at 16. The exception, however, has

not been extended to other types of claims. *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* not applicable to a defaulted *Brady* claim). In addition, *Martinez* does not apply to post-conviction appeals, only original post-conviction actions.

In addition, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Martinez*, 132 S. Ct. at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

### 6. Discussion of Cause and Prejudice

#### A.    *Subclaim 2(b)*

Petitioner alleges that the legal mail issues caused him to be unable to present evidence at his sentencing hearing, because he could not communicate with trial counsel. This is a potentially viable constitutional claim that bears on his sentence; however, Petitioner did not properly present this issue to the Idaho Supreme Court during the course of his state appellate proceedings. Therefore, it is procedurally defaulted.

Petitioner has not brought forward any facts showing which additional evidence he would have presented at sentencing, and how that evidence might have warranted a lesser sentence. Petitioner's multiple acts of sexual conduct with multiple children under threats of harm warranted serious sentences. Petitioner has not shown a reasonable probability of

a different sentence had he brought forward the unidentified evidence at sentencing, and thus he has not shown that prejudice resulted from the default of the claim.

Neither has Petitioner shown excusable cause for the default. Throughout his case, Petitioner has asserted that his counsel failed to appeal or failed to raise the claims he desired on appeal. Petitioner alleges that some of his claims are defaulted because of ineffective assistance of direct appeal counsel. However, the direct appeal counsel claim itself is procedurally defaulted for failure to properly present it to the state courts. A procedurally defaulted ineffective assistance claim may be used as "cause" to excuse the procedural default of another defaulted claim only if Petitioner can first show cause and prejudice for the default of the direct appeal counsel claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000). This, Petitioner has not done.

Petitioner has not satisfied either of these standards—particularly, he has failed to show that any prejudice accrued to his defense, and he has failed to show adequate cause justifying his failure to properly exhaust in state court an ineffective assistance of direct appeal counsel claim. Therefore, the procedural default of his claims remains unexcused.

### B. Claim 4

Claim 4 is prosecutorial misconduct based on (1) a *Brady* violation regarding evidence presented at the sentencing hearing, (2) double jeopardy grounds, and (3) a breach of the plea agreement. These are federal claims, but they were never raised before the Idaho Supreme Court; therefore, they are procedurally defaulted.

As cause, Petitioner faults his post-conviction counsel. However, because there is no constitutional right to post-conviction counsel, Petitioner cannot rely on post-

conviction counsel's failures to excuse the default of his claims under the traditional *Coleman* standard. In addition, the *Martinez* exception does not apply because these are not ineffective assistance of trial counsel claims. Therefore, Petitioner has failed to show cause for the default of these claims, and the Court cannot hear the merits of the claims.

### C. Claims 6, 7, and 8

Claim 6 is a deprivation of the right to counsel at trial. Petitioner alleges that he was not provided with an attorney free of charge, that he qualified for a public defender, and that he was forced to act as his own attorney. As discussed above, Petitioner, in fact, had private counsel during pretrial and trial proceedings.

If Petitioner is attempting to assert that a public defender may have done a better job than a private attorney, he has provided no foundational facts to support such a claim. In any event, this claim is procedurally defaulted for failure to raise it before the Idaho Supreme Court, and because Petitioner has not shown how a public defender could have done a better job on Petitioner's defense, there is no prejudice to excuse the default.

Similarly, Claim 7 is that trial counsel performed ineffectively. Petitioner has no incidents of ineffectiveness that are attributable to trial counsel; rather, he asserts the same allegations as above: Because *the State* interfered with his mail and attorney visits, Petitioner could not present evidence at hearings, could not file motions, could not file a timely notice of appeal in his post-conviction matter, and could not get rulings on his motions—because there is no causal link between his attorney's performance and the Court's decisions regarding Petitioner's pro se filings or the State's deprivation of Petitioner's mail and attorney visits, Petitioner has not shown prejudice resulting from the

default of this ineffective assistance of counsel claim.

An additional allegation that Petitioner has not presented to the state courts is that he was questioned outside his attorney's presence during the psychosexual evaluation. To the extent that this states a federal claim, it is procedurally defaulted. Petitioner has not shown prejudice resulting from this omission, because he has not shown a reasonable probability that he would have received a different sentence had his attorney been present at the psychosexual evaluation.

Petitioner also newly alleges in Claim 7 that the prosecutor was able to win several motions by default because no one was representing Petitioner. There are no facts to support this notion. Petitioner was at all times represented by counsel during trial and direct appeal proceedings. To the extent that Petitioner is asserting that his counsel was ineffective, Petitioner has stated no facts showing that he was prejudiced by any motions the prosecutor purportedly "won by default."

Claim 8 is ineffective assistance of counsel on direct appeal. To show prejudice with respect to direct appeal counsel, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).

Petitioner states that he did not authorize the appeal, and that appellate counsel Justin Curtis would not withdraw the appeal or allow Petitioner to present other claims that he wanted to present, telling Petitioner that the claims had to be raised on post-conviction review, because they required factual development. Petitioner does not show which claims Curtis should have brought that probably would have been successful on

appeal. Petitioner cites to the late Judge Hohnhorst's post-conviction opinion that, because Curtis failed to raise certain claims on appeal, Petitioner was foreclosed from doing so on post-conviction. (State's Lodging I-A, pp. 18-25, Exhibit A.) While it is true that Petitioner was foreclosed from raising certain claims on post-conviction that should have been raised on direct appeal *e.g.,* (double jeopardy, unlawful address, breach of the plea agreement), nothing in Judge Hohnhorst's opinion or in the record here suggests that Petitioner had meritorious direct appeal claims that were not presented by Curtis. Therefore, Petitioner has failed to show prejudice arising from his defaulted ineffective assistance of direct counsel claims.

## 4. Miscarriage of Justice

### A. *Standard of Law*

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim *if* he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

A compelling showing of actual innocence can satisfy the fundamental miscarriage of justice exception to procedural default, allowing a court to review Petitioner's otherwise defaulted claims on their merits. *See Schlup v. Delo*, 513 U.S. 298, 315, 324 (1995). There remains the caveat, however, that "actual innocence means

factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 64,

623 (1998).

Where the petitioner pled guilty and did not have the evidence in his case

evaluated by a jury, he must show that, based on all of the evidence, "it is more likely

than not that no reasonable juror would have found Petitioner guilty ...." *Van Buskirk v.*

*Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. at 327;

*Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003). The petitioner bears the burden of

demonstrating that "in light of all the evidence, including evidence not introduced at trial,

it is more likely than not that no reasonable juror would have found [him] guilty beyond a

reasonable doubt." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 539 (2006). The

standard is demanding and permits review only in the "extraordinary" case. *Schlup*, 513

U.S. at 327 (citation omitted).

Speaking specifically to cases in which petitioners challenge their guilty pleas, the

United States Supreme Court has held:

> [T]he representations of the defendant, his lawyer, and the
> prosecutor at [a plea] hearing, as well as any findings made by the judge
> accepting the plea, constitute a formidable barrier in any subsequent
> collateral proceedings. Solemn declarations in open court carry a strong
> presumption of verity. The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal, as are
> contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

### B. Discussion

There is no evidence in the record suggesting that Petitioner is actually innocent of

the crimes to which he pleaded guilty. In his allocution, he seemed to admit to the acts,

saying that he had an addiction problem, and, that "[e]verything I thought I was fighting for and had control over, I found out I had no control." (State's Lodging A-3, p. 90.) Therefore, Petitioner does not qualify for the miscarriage of justice exception.

## 7. Conclusion

Petitioner's claims are noncognizable, fail to state a federal claim upon which relief can be granted, or are procedurally defaulted, all as set forth above. Grounds to excuse procedural default are not evident in the record. Accordingly, Petitioner has not shown cause or prejudice or actual innocence to excuse the procedural default of his claim the Court need not reach the statute of limitations argument. The Amended Petition will be dismissed with prejudice.

### ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 23) is GRANTED.

2. Petitioner's Objections to Respondent's characterization of the record (Dkt. 30) are noted, but are not relevant to the basis for the dismissal of this action.

3. The Amended Petition for Writ of Habeas Corpus (Dkt. 16) is DISMISSED with prejudice.

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of

appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  August 28, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge